**Harry W. GREISS, as Executor of the last Will and Codicil thereto of Robert S. Clarke, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 54 C 24.

United States District Court
N. D. Illinois, E. D.
Dec. 4, 1956.

506

Dent, Hampton & Doten, Chicago, Ill., for plaintiff.

R. Tieken, U. S. Atty., Chicago, Ill., for defendant.

CAMPBELL, District Judge.

The question presented is whether the North Shore Sportsman's Club is a corporation organized and operated exclusively for scientific, educational or charitable purposes within the meaning of Section 812(d) of the Internal Revenue Code of 1939, 26 U.S.C. § 812(d). If it is, then the decedent's estate is entitled to an estate tax deduction since the amount bequeathed to that club would not be included in the decedent's net estate as that concept is used in the Internal Revenue Code of 1939.

The evidence has been submitted to the Court on a stipulation of facts and on the depositions of Jay Webb Lowell and Stanley H. Eppelheimer. The conclusions to be drawn from the facts and the law applicable thereto have been argued in written briefs.

Plaintiff is the executor under the last will and codicil thereto of Robert S. Clarke who died testate on October 17, 1950 at Chicago, Illinois. In his will, the decedent bequeathed a one-fifth interest in his residuary estate, amounting to $18,639.61, to the North Shore Sportsman's Club of Chicago. On December 28, 1951 plaintiff, as executor, filed his estate tax return in which he claimed that the North Shore Sportsman's Club, hereinafter referred to as the "Club", was a scientific, educational and charitable corporation within the meaning of Section 812(d), Title 26 United States Code.

On February 19, 1953, the District Director of Internal Revenue assessed a deficiency tax against plaintiff, $5,010.13 of which was assessed on the ground that the Club did not qualify for the exemption provided by Section 812(d) and that its one-fifth residuary share should be included and taxed as part of the decedent's net estate for estate tax purposes.

Plaintiff paid such deficiency tax and the interest thereon and on May 27, 1953 filed a claim for refund with the District Director, said claim being denied on October 21, 1953.

The Club was founded in 1939 by Robert S. Clarke, plaintiff's decedent. On October 10, 1942 the Club was incorporated under the laws of the State of Illinois as a corporation not for pecuniary profit. The purpose of the Club, as stated in its charter, is as follows:

"The object for which it is formed is to encourage, foster, promote and perpetuate out-door activities and aid in the conservation of wild life."

The by-laws of the Club, which were adopted upon the incorporation of the Club in 1942 and which were in force and effect on the date of the decedent's death, state the Club's objects and purposes to be the following:

"1. Good fellowship among its members.

"2. Educational programs in the interest of the conservation of wild life.

"3. The rehabilitation of polluted waters.

"4. The proper and safe use of firearms.

"5. The care, training and use of sporting dogs to further conservation by recovery of wounded game.

"6. The restocking of hunting areas by the release of suitable game birds."

At the time of Robert S. Clarke's death the membership of the Club was divided into three classes, i. e. regular, life and honorary members; and at this time the Club had a total membership of 148, consisting of 93 regular members and 55 honorary and life members.

The parties have stipulated that the Club is not operated for profit and that no part of its receipts, earnings or assets are or ever have been distributed to or for the use or benefit of any individual or member of the Club. The Club's principal source of revenue is derived from annual membership dues of $2 and from gifts and donations. At the monthly meetings members also pay an admission charge of $1.10 to aid in the cost of films and lectures, program materials and refreshments.

It is also stipulated that neither the Club nor any of its members, as such, have engaged in the carrying on of propaganda, or have otherwise attempted to influence legislation.

Since its organization, the Club has held regular monthly meetings on the second Tuesday of each month during an eight-month season of each year. Each season commences with October of one year and extends through May of the following year. These regular monthly meetings were, at the time of the testator's death and for several years prior and subsequent thereto, held in rented premises located at 1710 Cornelia Ave., Chicago, Illinois. Following each regular meeting, which would last from 1 to 2 hours, there was a social period usually lasting a half hour to 45 minutes; during these social periods, light refreshments, consisting usually of sandwiches and pretzels, and whiskey, beer and light drings were served; and during this period the members and guests exchanged their experiences in hunting, fishing and the conservation of wild game and fish and discussed questions raised by the evening's program. These refreshments were provided by the Club at no cost to the members, with the exception of the beer and whiskey, which was purchased by the Club and sold to the members and guests at cost.

Prior to 1951 complete records concerning such programs as were held by the Club were not kept but the parties have stipulated that typical programs offered at such meetings have included one or more of the following subjects:

1. Films and lectures by outstanding and well-known authorities on conservation work in all fields affecting wild life.

2. Methods of hunting-dog training, demonstrating how game can be conserved through the use of well-trained dogs to recover crippled game.

3. Correction of stream pollution and other detrimental practices which tend to interfere with the use of natural resources.

4. The expert and safe use of firearms.

5. Fly tying and rod building classes.

6. The prevention of cruelty to wild life.

7. Movies and films taken by various Club members while on African safaris showing African scenes and hunting experiences on that continent.

From time to time, the Club has sponsored classes conducted by i's members at one of the fieldhouses in the Chicago parks, instructing those attending: 1) on the art of making fly rods and fishing rods; 2) on the proper methods of fly tying; and 3) on the art of making various types of artificial baits.

During World War II the Club sponsored classes for those about to enter the armed services. At these classes, members of the Club who were experts in marksmanship gave instruction in the actual practice of firing weapons and in the expert use of firearms.

Finally, the parties have also stipulated that usually 25 to 35% of the total attending the regular meetings of the Club consisted of non-members of the Club who were invited as guests in an effort to increase the public interest in the Club's program concerning fish and game.

Against this background of facts it is necessary to consider the applicable statute. The pertinent provision of Section 812 provides as follows:

"For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \*

"(d) Transfers for public, charitable, and religious uses. The amount of all bequests, legacies, devises, or transfers \* \* \* to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is . carrying on propaganda, or otherwise attempting to influence legislation, \* \* \*."

The crucial language of the statute is that in order for a corporation to qualify under Section 812(d) it must be "organized and operated exclusively" for the purposes therein stated. Manifestly, a corporation must not only be organized exclusively for the stated purposes but it must also be operated ex- clusively for those purposes to come within the ambit of Section 812(d). (The words "charitable purposes" as hereinafter used in this memorandum shall include the scientific, and educational purposes set forth in Section 812(d); likewise, the words "charitable corporation" shall mean a corporation organized and operated exclusively for scientific, educational and other charitable purposes.) Under this section, therefore, the possibilities would be as follows:

1) A corporation organized exclusively and operated exclusively for charitable purposes.

2) A corporation organized exclusively but not operated exclusively for charitable purposes.

3) A corporation operated exclusively but not organized exclusively for charitable purposes.

4) A corporation neither organized exclusively nor operated exclusively for charitable purposes.

Of the four outlined possibilities, it is apparent that only the corporation described in 1) would qualify under Section 812(d). Obviously, the corporation described in 4) would not so qualify. The corporation described in 2) would not qualify since that corporation would be operated contrary to its charter and for purposes beyond the purview of Section 812(d). The corporation described in 3) would not qualify since, although operated exclusively for the stat- ed purposes, not being organized exclusively for charitable purposes, future expenditures for non-charitable purposes would not be foreclosed and would remain a distinct possibility.

The question presented then is, "To which category does the North Shore Sportsman's Club of Chicago belong?" A careful examination of the evidence requires a holding that the Club is neither organized exclusively nor operated exclusively for the purposes stated in Section 812(d) and that accordingly it belongs to the category out- lined in 4) above.

■ The issue whether the Club is organized exclusively for charitable purposes must be resolved by its charter. Harrison v. Barker Annuity Fund, 7 Cir., 90 F.2d 286. An examination of the Club's charter reveals that it has a two-fold purpose:

1) to encourage, foster, promote and perpetuate outdoor activities, and

2) to aid in the conservation of wild life.

Assuming that the Club's second purpose comes within Section 812(d), the Club's first purpose clearly does not. It is inconceivable that any charitable result can be derived from encouraging, fostering, promoting and perpetuating outdoor activities. Such a wide-sweeping, dragnet purpose would embrace many varied activities not contemplated by Section 812(d). For example, the Club could, consistent with this provision of its charter, organize and sponsor an African safari; it could encourage and promote the sport of mountain climbing; and it could encourage and promote the pastime of bird watching. As far fetched as these examples may seem to be, they serve the purpose of illustrating the fact that many non-charitable activities could be indulged in by the Club consistent with its object "to encourage, foster, promote and perpetuate outdoor activities."

■■ When there are certain tax advantages to be derived from bequeathing an amount of money to a charitable corporation, the bequest should be scrutinized lest the money so bequeathed might not possibly be used for charitable purposes. All reasonable doubts should be resolved in favor of granting the deduction but this is not to say that corporations which clearly are not charitable should be held to be that which they are not. The test to be applied is not, "Will the bequest be used for charitable purposes?" but, "Can the bequest possibly be used for non-charitable purposes?" Thus, the determination whether a corporation is organized exclusively for charitable purposes as outlined in Section 812(d) requires an additional determination whether the bequest, consistent with the corporation's charter, might not be used for charitable purposes.

These determinations are made necessary since there is a distinction between a bequest for a charitable purpose and a bequest to a charitable corporation. In the former case, if indeed the purpose is charitable, the trustee appointed to administer the fund for the charitable use would be held accountable if such funds were, in any degree, applied to any purpose other than the stated, charitable purpose. In the latter case, since there is no such fixed responsibility, once the bequest is given to the corporation, it could conceivably apply the fund to non-charitable purposes if a non-charitable purpose existed in that corporation's charter.

The ruling reached does not attempt to hold that a corporation of this sort could not be held to be a charitable corporation within the purview of Section 812(d) of the Internal Revenue Code of 1939 or within that section as it appears in Section 2055(a) (2) of the Internal Revenue Code of 1954, 26 U.S.C. § 2055 (a) (2). If such a status is desired, then it is incumbent on the drafters of the charter of the corporation to frame the purposes or objects for organizing the corporation in such language that the conclusion would reasonably follow that the corporation was indeed a corporation organized exclusively for charitable purposes.

Along these same lines, it is significant to note that neither in the Club's charter nor in its by-laws is the Club given the power to receive gifts such as the present bequest. It is also worthy of note that in neither of these documents is it indicated for what purposes such gifts as the instant one might be used. These considerations are persuasive in my ruling that the Club is not organized exclusively for charitable purposes.

It might be argued that the objects of the Club as stated in its by-laws cure any defect that might exist in the Club's charter. Observing, however, that the

charter of the Club would control over the by-laws if an inconsistency existed between the two, the first object enumerated in the by-laws—"Good fellowship among its members"—is such that the latitude given the Club under its charter would be encompassed by this provision in the by-laws.

For the reasons stated, therefore, I hold that the North Shore Sportsman's Club of Chicago is not a corporation organized exclusively for charitable purposes.

Having reached this conclusion, any further inquiry into the problem would be unnecessary. However, for purposes of completeness, I feel compelled to express my reasons why the Club has not been operated exclusively for charitable purposes.

■ Of the typical programs offered at the Club's monthly meetings prior to 1951, two of the seven examples clearly depict no charitable purpose. These would be the classes on fly tying and rod building and secondly the films and movies taken by various Club members while on African safaris showing African scenes and hunting experiences in Africa. Of some of the other typical programs, the classes on hunting-dog training and the expert and safe use of firearms could be said to be of as much interest to the individual Club member from his own personal standpoint as they would be from a conservation standpoint. In any event, on the showing made, I am not able to say that such programs were designed and intended for a purely conservation, and thus charitable, purpose. Nor am I able to say, in the absence of competent authority to the contrary, that these classes could be termed scientific or educational as these concepts are used in Section 812(d). The remaining typical programs, concerning conservation work in all fields of wild life and the prevention of cruelty to wild life, do qualify as charitable activities. But on such a meagre showing, can I hold that the Club was operated exclusively for charitable purposes? I think not.

While I do not consider the Club's social periods, which are held after each meeting, to be significant, in and of themselves, I do believe that such practices, coupled with the Club's monthly programs which in some cases are clearly unrelated to conservation work and which in other cases are somewhat questionably related to such work, clearly reveal that the social and otherwise personal objects of the Club are not merely incidental to the Club's work in the conservation field. From the evidence submitted, the North Shore Sportsman's Club appears to be a club where hunters and fishermen periodically assemble to pool their ideas and experiences for their own individual advancement in the field of hunting and fishing while, at the same time, promoting conservation of wild life and fish so that such outdoor activities might be preserved for the present and future generations. Accordingly, I am unable to hold, on the evidence before me, that the social and purely individual purposes of the Club were incidental to the charitable purposes.

I hold, therefore, that the North Shore Sportsman's Club has not been operated exclusively for charitable purposes.

Counsel for the plaintiff relies, in some degree, on the fact that the County Court of Cook County has held, on February 26, 1953, that the North Shore Sportsman's Club, and its residuary share herein, was exempt from Illinois Inheritance Tax. Counsel for the defendant, in the stipulation, reserved his rights to object to this Court's consideration of this fact for any purpose. The short answer to this issue is that the Cook County Court was there concerned with Section 28 of the Illinois Inheritance Tax Act, Ill.Rev.Stat.1955, c. 120, § 401; and, accordingly, the determination on said question could in no wise have any bearing on the issue whether the Club would qualify under Section 812(d) of the Internal Revenue Code of 1939.

Counsel for each party cite several cases which either advance the rules of

law applied here or which can readily be distinguished on their facts from the case at bar. Consequently, no useful purpose would be served by prolonging this memorandum by a discussion of these authorities as each case in this field must be decided on its own facts.

On the basis of the foregoing, the Court hereby enters the following:

### Findings of Fact

1–23. The facts stipulated in paragraphs 1 through 23, inclusive of the stipulation of facts herein shall stand as findings of fact 1 through 23, respectively, and the same are hereby entered and adopted as findings of fact as provided in Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C.

24. The North Shore Sportsman's Club of Chicago was not, and is not, organized exclusively for charitable, scientific, or educational purposes as provided in Section 812(d), 26 U.S.C. (1952 ed.)

25. The North Shore Sportsman's Club of Chicago, during the period from October 10, 1942 to October 17, 1950, was not operated exclusively for charitable, educational or scientific purposes as provided in Section 812(d), 26 U.S.C. (1952 ed.)

### Conclusions of Law

1. The Court has jurisdiction of the parties and of the subject matter.

2. The North Shore Sportsman's Club of Chicago is not such a corporation as within the purview of Section 812(d), 26 U.S.C. (1952 ed.)

3. The estate of Robert S. Clarke is not entitled to an estate tax deduction by virtue of the testator's bequest to the North Shore Sportsman's Club of Chicago.

4. The plaintiff is not entitled to an estate tax refund.

### Judgment

Accordingly, judgment is hereby entered for the defendant and against the plaintiff and the case is dismissed at plaintiff's costs.