INDUSTRIAL NATIONAL BANK OF PROVIDENCE and William R. Bogert, Co-Executors of the Will of Florence Brevoort Kane, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 2494.

United States District Court
D. Rhode Island.

Sept. 30, 1960.

Thomas R. Wickersham, of Tillinghast, Collins & Tanner, Bancroft Littlefield, Charles E. Clapp, II, of Edwards & Angell, Providence, R. I., for plaintiffs.

Joseph Mainelli, U. S. Atty., Arnold Williamson, Jr., Asst. U. S. Atty., Providence, R. I., Richard T. Mulcahey, U. S. Dept. of Justice, Washington, D. C., for defendant.

DAY, District Judge.

In this action the plaintiffs, executors under the will of the late Florence Brevoort Kane, who died testate on November 25, 1956, seek a refund of the federal estate tax assessed against her estate and collected from them as such executors.

The will of the decedent, dated October 10, 1955, directed her executors to sell her home in Narragansett, Rhode Island, and provided that the net proceeds of such sale be given to the Providence Art Club (hereinafter called the "Club") to establish the "Florence Brevoort Memorial Fund". In addition, she be-

queathed therein all of her art books, scrap books and albums, and gave one-half of her residuary estate to said Club.

The plaintiffs, who thereafter duly qualified as the executors of said will, filed the federal estate tax return for her estate in due course and paid the estate tax shown thereon to be due in the amount of $25,712.53. Upon examination thereof by the Commissioner of Internal Revenue the estate tax liability was determined to be $25,523.05 and thereupon the sum of $189.48 was refunded to the plaintiffs. While no claim was made in said federal estate tax return that the amounts of the bequests and devise to said Club were deductible from the gross estate of the decedent in the determination of the federal estate tax thereon, notice was given that such a claim would be made. On May 6, 1958 plaintiffs filed a timely claim for refund of said $25,523.05 on the ground that the amounts of said bequests and devise were deductible under Section 2055(a) (2) of the Internal Revenue Code of 1954, title 26 U.S.C.A. § 2055(a) (2).[1]

Their allowance would result in a determination that no federal estate tax was due and owing from said estate. No action was taken by the Commissioner on said claim and the instant action followed.

The evidence presented during the trial established the following facts: The Club was incorporated by the General Assembly by special act, passed April 15, 1880, under the name of Providence Art Club "for art culture". No other purpose is set forth in its charter. According to its constitution it has two categories of membership, artist and non-artist. Within these categories there are active or resident members, non-resident members, honorary and life members. Non-artist members are also referred to as active or lay members. Life members are those who have been members of said Club for fifty years or longer. A non-resident member is one who resides beyond a radius of twenty-five miles from the club house and has no place of business in the City of Providence. At the time of the trial of this action the Club's membership consisted of 184 resident artist members, 48 non-resident artist members, 1 honorary artist member and 6 life artist members. There were also 432 resident non-artist members, 43 non-resident non-artist members and 13 life non-artist members. Members are elected by the Board of Managers of the Club, but a person proposed for artist membership must first submit some of his work to a membership committee composed entirely of artist members which passes upon the quality of his work to determine whether he is qualified as an artist. If said committee approves the quality of his work notification thereof is then given to the Board of Managers which then proceeds to pass upon the proposal of said artist for membership. There is no limit upon the number of artist memberships. There is a limit of 430 on the number of non-artist memberships. The dues for non-artist members are $52 per year; and for artist members, $35 per year. Much of the administrative

1. "Sec. 2055. TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES

"(a) In general.—For purposes of the tax imposed by Section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made before the date prescribed for the filing of the estate tax return)—

\* \* \* \* \*

"(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation".

and mechanical work required in connection with the activities of the Club is performed by the non-artist members.

The Club is the owner of three buildings located at numbers 11, 10 and 7 Thomas Street in the City of Providence. Its main building located at 11 Thomas Street was built around 1780 and was acquired by the Club around 1880. The first floor thereof has an entrance hall, a reading room, a lounging room, a kitchen and dining room, called the "cafe", and a cloak or retiring room. On the second floor there is an art gallery which encompasses the area of what was originally the second and third floors of said structure. There are also two small office rooms on this floor. Access to the art gallery may be had by means of a stairway from the entrance hall and another extending from the cafe.

The adjoining building at 10 Thomas Street is known as the Dodge House. It was also built around 1780 and was acquired by the Club about 1916. This building is connected with the building at 11 Thomas Street by a second floor freeway. The lower floor of Dodge House is rented to the proprietor of an artist supplies store. There are a small art gallery and two reading rooms on the second floor and on the third floor there is a large room used for sketch classes.

The Club's third building at 7 Thomas Street is known as the Burleigh House. Originally built by an artist to provide studios for artists it has been continuously used for that purpose. The Club rents the six studios contained therein to local artists for such rentals as will meet taxes and the costs of upkeep and maintenance.

The Club has no gymnasium or athletic facilities, no billiard, pool, card or game rooms and does not have a liquor license and does not sell liquors.

It does maintain and operate said cafe in which lunch is served on week-days throughout the year and in which dinner is served on Saturday evenings during the winter and occasionally prior to Club functions. The average daily attendance at luncheon is approximately 55, except during July and August when it is about 40. The average attendance at the Saturday night dinners is between 40 and 50. The cafe apparently has been operated at a loss during the years 1956 to 1959, inclusive.

The Club maintains an art library comprising many books of interest to artists and a large number of American and foreign art magazines which have been permanently bound. Current editions of art magazines as well as some other magazines of general interest are also available to readers in the reading rooms.

Some of the facilities of the Club are from time to time rented to other organizations for their meetings. Included among these organizations have been the Providence Water Color Club, the Local Chapter of the American Institute of Architects, the Audobon Society, the Shakespeare Club, the Alliance Francaise and the Franco-American Educational Society of America. The facilities of the Club have also occasionally been rented to members for personal events such as wedding receptions or dinners. The use of the art gallery has been and is given to the Providence Water Color Club for two weeks every year for an exhibit which it sponsors.

Regular art exhibitions have been held by the Club since 1900. These exhibits have been of oil paintings, water color paintings, prints, lithographs, sculpture and other works of art. Some of these exhibits have been limited to the works of one or two artists and were not confined to members of the Club. On these occasions the artist or artists have been given the use of the art gallery for a two week period for such exhibition. There have been other exhibitions, known as open shows, in which the works of member or non-member artists from various parts of the world were displayed. In some of the open shows there has been an art jury which selects the paintings to be hung. In others there has been no jury and the artist exhibiting was permitted to choose his own paint-

ing for display. Each of the exhibits has generally lasted for a period of two weeks except in the summer when there has been a summer-long exhibit. At the time of trial it appeared that the foregoing practice was still in effect and that exhibits run continuously throughout the year and are open to the general public. Printed notices of exhibits have been and are mailed out to a list of artists on file with the Club and to various art magazines, giving artists who may so desire an opportunity to submit works of art for the exhibits. These art exhibits have, the evidence showed, merited review by the art critic of the Providence Journal, a newspaper published daily and on Sunday in the City of Providence.

At the opening of each art exhibit the Club gives an afternoon tea. In recent years these openings have been on Sunday afternoons. Invitations are sent to the members of the Club and to approximately 300 non-members who are known to be interested in art, and to libraries. In addition, a similar notice is published in the local newspapers. Attendance at these opening teas ranges from 75 to 250 persons. These exhibitions are open to the general public daily between the hours of 10:00 a. m. and 5:00 p. m. and on Sundays from 2:00 p. m. to 5:00 p. m. It is clear that many members of the general public in addition to members of the Club view these exhibits. In all these exhibits many of the pictures or paintings are offered for sale by the artists. If a picture or painting is sold the Club charges a ten per cent commission to a member artist and a fifteen per cent commission to a non-member artist, both of which are substantially less than the commissions charged by art galleries. There is also an annual exhibit known as the Little Picture Show which has been held for about fifty-five years just before Christmas, in which artists are invited to display small pictures which sell for prices in excess of about $25.

The cost of the art exhibitions is borne by the Club and the cost of a single exhibition has been as much as $4,500. Cash prizes to exhibitors are awarded at five or six exhibitions a year and the total prizes average about $1,500 per year.

In addition to the foregoing activities the Club conducts various art classes, including the Saturday Night Sketch Class, the Thursday Ladies Sketch Class, and the Monday Afternoon Duffers Class. The Saturday Night Sketch Class is an advanced class, attended mostly by artist members. The Club supplies a model for this class. For the others it provides a paid instructor, and for all of said classes it provides the necessary easels, boards, paper, etc.

Other activities of the Club include the holding of "Artist Nights", "Ladies Afternoons", "Members Nights" and "Friday Nights". "Artist Nights" are held on six or seven nights during the winter months. On these occasions there are lectures on a variety of artistic subjects preceded by a dinner free of charge to artist members. These lectures are open to the full membership of the Club. "Ladies Afternoons" are held on five or six Thursday afternoons during the winter months and are devoted to lectures on art and cultural matters which are followed by afternoon tea. "Members Nights" are generally held twice a year. These are open to the full membership and their guests and are devoted to lectures on artistic, educational and cultural subjects. "Friday Nights" are held on ten or twelve nights annually during the winter months and are open to all male members of the Club. On these occasions there are lectures on subjects relating to art and culture which are preceded by a supper supplied by the Club to the members.

The sole issue before me is whether the amounts of said bequests and devise to said Club are deductible under said section 2055(a) (2) of the Internal Revenue Code of 1954 on the ground, as contended by the plaintiffs and disputed by the Government, that said Club is "organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, including the encouragement of art * * *." No contention is made by the Government (and

none could be reasonably made) that any part of the net earnings of said Club inures to the benefit of any private stockholder or individual, or that any substantial part of its activities is carrying on propaganda or otherwise attempting to influence legislation.

■ At the outset it is to be observed that the plaintiffs have the burden of establishing that the Club is an organization of the type to which the above quoted provisions apply. Universal Oil Products Co. v. Campbell, 7 Cir., 1950, 181 F.2d 451; Sun-Herald Corporation v. Duggan, 2 Cir., 1934, 73 F.2d 298. To qualify for said exemption the Club must be shown to meet two requirements, viz.: that it is both organized exclusively and operated exclusively for one or more of the purposes stated therein. Universal Oil Products Co. v. Campbell, supra; Sun-Herald Corporation v. Duggan, supra; Greiss v. United States, D.C. Ill.1956, 146 F.Supp. 505. And the purpose of an organization must be determined from the purpose declared in the instrument creating it. Helvering v. Coleman-Gilbert Associates, 1935, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278; Northwestern Municipal Ass'n, Inc. v. United States, 8 Cir., 1938, 99 F.2d 460; Gagne v. Hanover Water Works Co., 1 Cir., 1937, 92 F.2d 659.

In my opinion the Club clearly meets the first of these requirements. Its sole purpose as stated in its charter is "for art culture". While this statement of purpose is unusually brief, it is clear that it was incorporated exclusively "for— educational purposes including the encouragement of art".

■■ There remains the question of whether the Club is operated exclusively for said purposes. The answer to this question depends upon whether the activities of said Club are primarily and predominantly in furtherance of said purposes. The existence of other activities, social in nature, if merely auxiliary to these purposes does not constitute a ground for denying the exemption. The term "exclusively" as used in section 2055(a) (2) is to be given a different

connotation from that ordinarily accorded to it. In Seasongood v. Commissioner of Internal Revenue, 6 Cir., 1955, 227 F.2d 907, at page 910, the Court in construing its meaning in another section of the Internal Revenue Code dealing with the deductibility from gross income of gifts to corporations of the same type as those described in section 2055(a) (2) said:

"It seems clear, therefore, in the light of the amended section, that the term 'exclusively' is given a connotation differing from the ordinary meaning of that term, as originally used, and activities which are minor, and not substantial, do not disqualify charitable and educational corporations from the benefits of the exemption nor do they disqualify individual contributors to such corporations from deducting them in their income tax returns. * * * "

See also Dulles et al. v. Johnson, 2 Cir., 1959, 273 F.2d 362.

■ In my opinion it would serve no useful purpose to review the facts which have been hereinbefore fully set forth. Each case of this type must be decided on its own facts in accordance with established principles of law. Considering all of the evidence and the reasonable inferences to be drawn therefrom, it is abundantly clear that continuously for the past fifty years the primary and predominant activities of said Club, together with its facilities, have been devoted to the sponsorship of art exhibitions, to encouraging the development of the skills and talents of artists, regardless of whether they are members or nonmembers thereof, and to the cultivation and stimulation of an interest in and an appreciation of art by its members and the public. Such activities are clearly consistent with and in pursuance of its stated purpose of incorporation. The operation of its dining room, which the Government stresses, in and of itself cannot disqualify it from the exemption under section 2055, particularly when considered in the light of the extent and occasions of its use. Cf. Bankers' Club of

America v. United States, 1930, 37 F.2d 982, 69 Ct.Cl. 121. Similarly, the other so-called social activities upon which the Government relies for such disqualification are minor, not substantial, and are merely incidental to said primary and predominant activities. In my considered judgment the Club meets the second requirement under said section 2055 (a) (2) for the exemption provided therein.

In conclusion, I find that the amounts of said bequests and devise should have been deducted from the gross estate of the decedent in the determination of any federal estate taxes due thereon and that the plaintiffs are entitled to the refund of the taxes paid by them, together with interest thereon.

Within twenty days from the date hereof the parties will present to me a computation of said refund with interest to which the plaintiffs are entitled, in accordance with the conclusion hereinbefore stated, and thereupon judgment will be entered in their favor in said amount.